IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| FLAGSTAR BANK, FSB, | ) |
| | ) |
|       Plaintiff, | ) |
| | )   CIV. NO. 10-cv-15 |
|       v. | ) |
| | ) |
| ANGELIQUE R. HART | ) |
| | ) |
|       Defendant. | ) |
| _____ | ) |

**MEMORANDUM OPINION AND ORDER**

Finch, Senior Judge

THIS MATTER is before the Court on the motions of plaintiff Flagstar Bank, FSB ("Flagstar") for summary judgment. In its first motion [Doc. #37], Flagstar contends that defendant Angelique Hart ("Hart") has defaulted on the terms of a promissory note secured by a mortgage on real property and, as holder of the note, seeks to foreclose on the subject property. Hart opposes the motion, asserting that Flagstar lacks capacity to bring suit because it failed to pay franchise taxes. Also under consideration is Flagstar's motion for summary judgment against Hart's counter-claims [Doc. #53]. Hart asserts that Flagstar has violated the Truth in Lending Act and breached its duty of good faith and fair dealing in transactions involving the subject debt of this lawsuit.

    **I.**     **Background**

On June 23, 2008, defendant Hart executed and delivered to Allied Home Mortgage Corporation a promissory note (the "Note") obligating her to pay the principal amount of

$207,075.00, together with interest at the rate of 6.735 per annum. (Pl. Statement of Undisputed Facts ¶ 3 (Doc. #39)). To secure payment of the Note, Hart granted to Allied and Mortgage Electronic Registration Systems, Inc., as a nominee for Allied ("MERS") a first priority mortgage dated June 23, 2008 over property to which she was a titleholder, described as:

> Plot No. 508 (0.2974 U.S. acres) of Estate Work and Rest,
> Queen Quarter, St. Croix, U.S. Virgin Islands, as
> shown on OLG Drawing No. 4624 dated July 20, 1990.

(*Id*. ¶¶ 2, 6.)

Pursuant to the terms of the Note, payments were to be made by equal consecutive monthly installments of $1,291.88 beginning August 1, 2008 until all amounts are fully paid, but no later than July 1, 2038. (*Id*. ¶ 4.) On or about August 1, 2009, Hart defaulted under the terms and conditions of the Note, in that monthly installments of principal and interest became due and were unpaid. (*Id*. ¶ 7.)[1] Flagstar gave notice of default to Hart by correspondence dated September 18, 2009 and addressed to Hart at the addresses last given to Flagstar, advising her that failure to cure the default would result in acceleration of the debt and foreclosure of the mortgage lien. (*Id*. ¶ 9; Decl. of Debts Due, ¶ 9; Compl. Ex. D.)[2] On or about March 3, 2010, MERS assigned its entire interest in the subject property to Flagstar. (*Id*. ¶ 10.) To date, the default has not been cured and Hart remains in default under the terms of the Note and Mortgage. (*Id*. ¶¶ 11-12.) Pursuant to the terms of the Note, Flagstar has elected that the whole principal sum with all unpaid accrued interest shall be immediately due and payable. (*Id*. ¶ 13.) As of February 1, 2011, there is due and owing to Flagstar from Hart the principal sum of $204,692.82,

---

[1] Hart contests this fact on that basis that she attempted to make partial payments but Flagstar refused to accept them. However, Hart does not cite to any provision of the mortgage that allows her to avoid default by making a partial payment. Instead, the Note and Mortgage provide that a failure to pay in a monthly payment due in full results in a default by the borrower, Hart. (See Compl. Ex. B (Note) ¶ 6; Ex. C (Mortgage) ¶ 9.)

[2] In her counter-statement of facts, Hart disputes that she received correspondence from Plaintiff dated September 18, 2009. However, the Court could not locate an affidavit attesting to this fact.

plus accrued interest from July 1, 2009 to February 1, 2011 and related costs and fees. (*Id.* ¶ 14; Def. Counterstatement of Facts ¶ 14.)

Hart acknowledges that she is in default under the terms of the Note and Mortgage, but contends that Flagstar lacks capacity to maintain this foreclosure action because it has failed to pay franchise taxes in the Virgin Islands as required by 13 V.I.C. § 533(a). Hart also brings two counterclaims against Flagstar. The first alleges that Flagstar violated the Truth in Lending Act ("TILA") by improperly disclosing finance charges, the amount financed and the applicable percentage rate. The second alleges that Flagstar breached its duty of good faith and fair dealing by refusing to accept partial payments from Hart and for making the loan with the intent to foreclose, in violation of 9 V.I.C. § 374(a)(6).

## II. Standard of Review

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Nicini v. Morra*, 212 F.3d 798, 805-806 (3d Cir. 2000) (citing Fed.R.Civ.P. 56(c)). A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Nicini*, 212 F.3d at 806. "A plaintiff, however, cannot avert summary judgment by resting on the allegations in his pleadings, but rather must present evidence from which a jury could find in his favor." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 251, n.12 (3d Cir. 2010) (citing *Ridgewood Bd. of Educ. v. N.E. ex. rel. M.E.*, 172 F.3d 238, 252 (3d Cir.1999)). Neither can the nonmoving party defeat summary judgment with "evidence

[that] is merely colorable or not significantly probative." *Monroe v. Beard*, 536 F.3d 198, 207 (3d Cir. 2008) (citation omitted). *See also Acumed LLC v. Advanced Surgical Services, Inc*., 561 F.3d 199, 228 (3d Cir. 2009) ("speculation and conjecture may not defeat a motion for summary judgment") (citation omitted).

### III. Discussion

#### a. Applicability of 13 V.I.C. § 533(a) to Flagstar

Section 533(a) of Title 13 of the Virgin Islands Code provides that "[n]o corporation may commence or maintain any action in any court if it has not paid its annual franchise tax last due." It is undisputed that Flagstar has not paid franchise taxes in the Virgin Islands. However, the parties disagree as to whether that fact precludes the instant lawsuit. Flagstar argues that it is exempt under § 535 of title 13 from paying a franchise tax. Section 535 provides as follows:

> This chapter shall not apply to *banks, foreign banks which have branches established in the United States Virgin Islands, and national banking associations*, as those institutions are defined by section 1 of Title 9, and to domestic corporations organized for religious, fraternal, scientific, benevolent, social, charitable, or educational purposes, or to foreign corporations organized for like purposes, when not engaged in the United States Virgin Islands in the loaning of money or the conducting of any other business pursuits for profit.

13 V.I.C. § 535.

Plaintiff's position is that § 535 exempts all banks, foreign banks with branches in the USVI and national banking associations from paying a franchise tax in the Virgin Islands. As a Michigan-based domestic corporation, Flagstar contends that it meets the definition of a "foreign bank" under title 9, § 1 of the Virgin Islands Code. Section 1 defines a foreign bank as "a corporation organized for the purpose of engaging in banking business under the laws of another

territory or state, or of a foreign country, operating a bank at the place of its incorporation." Hart does not dispute that Flagstar is a foreign bank but insists, focusing on the last portion of § 535, that the statute only exempts such institutions when they are "not engaged in the United States Virgin Islands in the loaning of money or the conducting of any other business pursuits for profit."

When interpreting a statute, the Court looks first to the statute's plain language. *In re Visteon Corp.*, 612 F.3d 210, 219 (3d Cir. 2010). However, "[t]he construction of statutory language often turns on context." *FCC v. AT & T Inc.*, 131 S.Ct. 1177, 1182 (2011). In this case, context is key because there is some ambiguity as to whether the phrase "not engaged in the United States Virgin Islands in the loaning of money or the conducting of any other business pursuits for profit" modifies a portion of the text, or the entire text that comes before it. Indeed, grammatically speaking, it is possible to read the statute either way.[3] In Hart's reading, the phrase applies to the "banks" as well as the domestic and foreign corporations delineated in § 535. Flagstar contends that the phrase beginning "not engaged" applies only to the items following the conjunction "and," *i.e.*, domestic and foreign corporations.

The issue is resolved by calling on another principle of statutory interpretation—the principle that counsels the Court to avoid "statutory interpretations 'which would produce absurd results . . . if alternative interpretations consistent with the legislative purpose are available.'"

---

[3] Flagstar offers an interpretation of the statute that relies on the "last antecedent" rule, a rule which holds that "qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding and not to others more remote." *United States v. Hodge*, 321 F.3d 429, 436 (3d Cir.2003) (internal quotations and citation omitted). If applied here, the "last antecedent" prior to the final modifying phrase "not engaged in" would be "foreign corporations organized for like purposes," and thus the phrase beginning "not engaged in" would have no application to "domestic corporations," a result which cannot be adequately explained. Moreover, there are times when the "across the board" rule dictates the converse method of interpreting the scope of a modifying phrase. *See, e.g., Wholesale Tobacco Dealers Bureau of Southern Californiav. National Candy & Tobacco Co.*, 11 Cal.2d 634, 659 (Cal.1938) (quoting *Porto Rico Ry. etc. Co. v. Mor,* 253 U. S. 345 (1920) ("'When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.")) Accordingly, the Court declines to rule on such slippery linguistic grounds. For a general discussion of linguistic arguments such as the last antecedent rule and the role they play in statutory interpretation *see* Lawrence M. Solan, *The Language of Judges*, 28-38 (1993).

*United States v. Abbott*, 574 F.3d 203, 210-11 (3d Cir. 2009) (quoting *211 First Merchants Acceptance Corp. v. J.C. Bradford & Co.*, 198 F.3d 394, 403 (3d Cir.1999)).

According to Hart's reading of § 535, the legislators in the Virgin Islands intended to exempt banks and national banking associations from the franchise tax, when those entities are "not engaged in the United States Virgin Islands in the loaning of money or the conducting of any other business pursuits for profit." However, the Court cannot conceive of a situation in which the tax *could* apply to any of the banks mentioned in § 535 if they were *not* conducting some business for profit in the Virgin Islands. In other words, the exemption would be completely meaningless, as it would apply only to those who were not subject to the tax in the first instance. Moreover, the Court cannot imagine a scenario where a bank would be operating in the Virgin Islands as a nonprofit organization, *i.e.,* they were not engaged in money-lending or pursuing profit of any kind.[4] On the other hand, common sense counsels that domestic or foreign corporations "organized for religious, fraternal, scientific, benevolent, social, charitable, or educational purposes," ordinarily function as nonprofit entities but also might become involved in business pursuits that would render the exemption void. The legislative history, though limited, also supports this reading of the statute. Prior to 1959, § 535 contained no reference to banks, but the remaining text was identical, suggesting that the phrase "when not

---

[4] Section 1 of Title 9 defines the relevant banks as follows:

"Bank" means a domestic stock or mutual corporation or other legal entity with sufficient capital, authorized by law to receive deposits of money or securities, to open credits and accounts current and savings accounts, to make loans, to discount drafts, notes or other negotiable paper, to purchase and sell drafts, to trade in gold and silver, and in general to engage in the business of banking, closely related activities, and other services and activities as provided in this Title; but does not mean a national bank.

"Foreign bank" means a corporation organized for the purpose of engaging in banking business under the laws of another territory or state, or of a foreign country, operating a bank at the place of its incorporation.

"National banking association" means a bank incorporated and organized under the National Bank Act (12 U.S.C. § 21 et seq.), and laws amendatory thereof or supplementary thereto.

The definitions do not contemplate a bank which does not operate for profit.

engaged in the United States Virgin Islands in the loaning of money or the conducting of any other business pursuits for profit," was specifically formulated to limit the conditions in which a nonprofit corporation, not a bank, was to receive the franchise tax exemption.[5] In sum, the Court concludes that Flagstar is not precluded from bringing suit for failure to pay a franchise tax in the Virgin Islands.

### b. Violation of Truth in Lending Act ("TILA")

"TILA is a federal consumer protection statute, intended to promote the informed use of credit by requiring certain uniform disclosures from lenders." *In re Community Bank of Northern Virginia*, 622 F.3d 275, 282 (3d Cir. 2010). *See* 15 U.S.C. § 1601(a) (the purpose of the statute is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit"). TILA, implemented by Regulation Z, 12 C.F.R. §§ 226.1 et seq., requires creditors who make loans secured by a borrower's principal dwelling to provide those borrowers with certain material disclosures. *In re Community Bank of Northern Virginia*, 622 F.3d at 282 (citing 12 C.F. R. § 226.18). "Specifically, the lender is required to disclose the finance charge, the amount financed and the annual percentage rate." *Bowmer v. NovaStar Mortg. Funding Trust, Series 2006-1*, 711 F. Supp. 2d 390, 393 (E.D. Pa. 2010) (citing 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18). Moreover, "[b]ecause the purpose of the TILA is to assure meaningful disclosures, the issuer must not only disclose the required terms, it must do so accurately."

---

[5] In fact, this same language, without any mention of foreign corporations and banks, appears in § 432 of title 13, a subsection which deals with filing fees:

> This subchapter shall not apply to domestic corporations organized for religious, fraternal, scientific, benevolent, social, charitable, or educational purposes, or to foreign corporations organized for like purposes, *when not engaged in the United States Virgin Islands in the lending of money or the conducting of any other business pursuits for profit*.

(emphasis added.)

*Roberts v. Fleet Bank (R.I.)*, 342 F.3d 260, 266 (3d Cir. 2003) (internal quotations and citation omitted).

Hart alleges that Flagstar breached the TILA and Regulation Z by improperly disclosing the following information pertaining to her loan: the finance charge, the amount financed and the applicable percentage rate. Specifically, Hart asserts that Flagstar "violated the Truth In Lending Act when it issued two Truth In Lending Statements with conflicting finance charges." (Def. Supp. Statement of Undisputed Facts, Ex. A.) As evidence, Hart cites discrepancies in two disclosure statements she received, the first on or about May 8, 2008, and the second, on June 23, 2008, the date that she closed on the subject property.[6] The May 8, 2008 statement disclosed the following information:

> Annual percentage rate (the cost of your credit as a yearly rate): 7.115%
> Finance charge (the dollar amount the credit will cost you): $303,183.12
> Amount financed (the amount of credit provided to you or on your behalf) : $217,550.11
> Total payments: (the amount you will have paid after making all payments as scheduled) $520,773.23

(Def. Answer & Counterclaim, Ex. A.)

In the May 8th disclosure statement, an asterisk precedes the financial data listed above. The asterisk indicates that the numbers provided are an estimate. Additionally, the statement indicates that it "is neither a contract nor a commitment to lend."

On June 23, 2008, the date of the closing, the following information pertaining to Hart's loan was disclosed:

> Annual percentage rate (the cost of your credit as a yearly rate): 7.143%
> Finance charge (the dollar amount the credit will cost you): $277,232.44

---

[6] There is confusion in the pleadings as to whether Hart received the second set of disclosures on June 23; she indicates that she did in ¶ 11, but then states that she did not in ¶ 15. It appears that Hart saw the documents on June 23rd but did not have a copy until July. In any case, Hart's signature appears on the June 23rd disclosure statement and the date printed beside her signature is 6/23/08. Thus, the Court concludes that she was shown the second and final disclosure statement on June 23, 2008.

> Amount financed (the amount of credit provided to you or on your behalf): $199,024.90
> Total payments: (the amount you will have paid after making all payments as scheduled) $476,257.34.

(*Id.*, Ex. B.)[7]

Based on the above cited facts, Hart claims actual and statutory damages pursuant to 15 U.S.C. § 1640(a)(1) and (a)(2).

Flagstar contends that the one year statute of limitations has run on Hart's claim under TILA. TILA provides a one-year statute of limitations for damages claims. *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 501 (3d Cir. 1998) (citing 15 U.S.C. § 1640(e)). The statute of limitations period provided in § 1640(e) runs from the date of the violation. 15 U.S.C. § 1640(e). There is no dispute that Hart received the final Truth In Lending Disclosure Statement ("TILDS") disclosure on June 23, 2008, which would be the date of the alleged violation. Thus, her counterclaims, brought on April 30, 2010 were filed out of time. Moreover, while § 1640(e) permits a party from asserting the violation after the statute has run, it only does so where a TILA violation is asserted "as a matter of defense by recoupment or set-off in such action." Here, Hart seeks damages rather than recoupment. Thus, absent any basis for an equitable tolling of limitations period, the Court must conclude that her claims are time-barred.[8]

However, even assuming arguendo that there was a basis to toll the statute, the facts asserted by Hart fail to establish a violation of TILA. The first TILDS was merely an estimate, and the document so indicated by placing an asterisk next to the figures and explaining at the bottom of the document that the figures were estimates. Under Regulation Z creditors are

---

[7] On the same date, Hart executed a promissory note and security agreement for the subject property in which the promissory note lists Allied as the lender and contains Hart's promise to pay the principal of $207,075.00 together with an interest rate of 6.375%. (Def. Counterclaim, ¶ 9.) The fact that promissory note obligated Hart to pay less interest than was stated in either the estimate TILDS or the final TILDS leaves the Court wondering what injury Hart suffered in this case.

[8] The Third Circuit has determined that the statute of limitations under § 1640(a) is amenable to tolling. *See Ramadan v. Chase Manhattan Corp.* 156 F.3d 499, 504 (3d Cir. 1998).

expressly permitted to give estimates. *See Bowmer*, 711 F. Supp. 2d at 395 (citing 12 C.F.R. 226.17(c)(2)(i) ("[i]f any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate."); *see also In re McNinch*, 250 B.R. 848, 856 (Bkrtcy. W.D. Pa. 2000) (noting that the "variance between estimates and terms of actual loans is not per se evidence of TILA violations"). The Court agrees that here, where estimates are permitted, the mere fact that the "estimate" provided in the first TILDS varied from the final TILDS does not establish a violation of TILA. *See Bowmer*, 711 F. Supp. 2d at 394-95 (finding that where the finance charges in the TILDS were asterisked to indicate that the numbers were estimates, there was no violation of TILA when the final TILDS differed from the estimate).

### c. Breach of the duty of good faith and fair dealing

Hart claims that Flagstar acted in bad faith when it refused to accept partial payments on the monthly installments due and instead sought foreclosure. (Counterclaim ¶ 24.) This bad faith Hart alleges to be part and parcel of Flagstar's scheme to make the loan to Hart with the intent of foreclosing in violation of 9 V.I.C. § 374(a)(6).

To state a claim for breach of the implied duties of good faith and fair dealing under Virgin Islands law, a plaintiff must allege: "(1) that a contract existed between the parties, and (2) that, in the performance or enforcement of the contract, the opposing party engaged in conduct that was fraudulent, deceitful, or otherwise inconsistent with the purpose of the agreement or the reasonable expectations of the parties." *LPP Mortgage Ltd. v. Prosper, 2008 WL 5272723*, at *2 (D.V.I. Dec. 17, 2008) (citing Restatement (Second) of Contracts § 205).

The related but distinct provision under § 374(a)(6) of title 9 prohibits a mortgage lender

or mortgage broker from "mak[ing], directly or indirectly, any mortgage loan with the intent to foreclose on the borrower's property." In determining whether a mortgage loan was made with the intent to foreclose on the borrower's property, the Court considers the "[l]ack of the probability of full repayment of the loan by the borrower" and whether there is "[a] significant proportion of similarly foreclosed loans by the lender." 9 V.I.C. § 374(a)(6)(A)-(B).

In this case, Hart has offered no evidence of bad faith, other than Flagstar's decision to insist on full rather than partial payment of the mortgage pursuant to the terms of the contract. However, Flagstar does not breach the implied covenants of good faith and fair dealing by simply asserting its rights under the terms of a contract. *Pemberton Sales & Service, Inc. v. Banco Popular de Puerto Rico*, 877 F. Supp. 961, 966 (D.V.I. 1994). The Court also finds that there is no evidence in the record that supports Hart's claim under § 374(a)(6) that Flagstar made the mortgage loan with the intent to foreclose. Hart has made no showing that it was improbable that she would be able to fully repay the loan, or that there was a pattern of similarly foreclosed loans by the lender. The conclusory allegations in her counterclaims are insufficient to defeat a motion for summary judgment. *See Sheridan*, 609 F.3d at 251. In short, there is no genuine issue of material fact with respect to the bad faith claim or the claim under § 374(a)(6) and the plaintiff must prevail on these claims.

### IV. Conclusion

In sum, it is undisputed that Hart defaulted on a promissory note owned by Flagstar and that Flagstar is entitled to judgment as a matter of law. Moreover, Hart has failed to provide evidence establishing that Flagstar violated the TILA or that it acted in bad faith when it entered into a loan agreement with Hart. Accordingly, it is hereby ORDERED that Flagstar's motion for summary judgment is GRANTED on its debt and foreclosure action; it is further ORDERED that

Flagstar's motion for summary judgment is GRANTED as to Hart's counterclaims. A separate judgment will be entered on the foreclosure claim.

**ENTER**:

Dated: April 14, 2011

_____/s/_____
RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE